EDWARD HANKS, ET AL., *v.* DARCUS WRIGHT, ET AL.

**Agreement to Convey Real Estate—Will.**

> The mere intimation by a testator to his relative as to what he intends in the future to do with his estate is not a contract that can be enforced after his death, but an agreement to give land to a relative is a good consideration for his agreeing to return and live near his relative, and when the donee is put in possession and complies with the contract he is entitled to the land.

APPEAL FROM HART CIRCUIT COURT.

October 3, 1878.

OPINION BY JUDGE ELLIOTT:

John Wright resided on a farm in Hart county with his two sisters, and near him resided the appellant, Edward Hanks and his wife and several children till some time before the war, when Hanks and his family removed to the state of Missouri.

John Wright had never married, nor had his two sisters who resided with him. The wife of appellant was John Wright's niece, and for her and her children he cherished a warm affection. Hanks and wife and family emigrated first to Missouri and then to Illinois.

John Wright and Hanks kept up a correspondence by letters after Hanks's removal to the West, and in .Wright's letters he pressed Hanks to bring his family back to Hart county and reside near to him. This correspondence continued up to the 18th of December, 1867, when Wright wrote to Edward Hanks and family the following letter:

"Mr. Edward Hanks:

"SIR—You have been promising me to come back for three years and now if you are a coming I want you to come back by the last of February if you intend to come, and if you don't intend to come yourself I want you to send James and George and Ann by the last of February, sixty-eight, and if what I have offered is no inducement to you and your children, don't come; I will make some other arrangements to do with my land and property. Now the land I have for you, I suppose, is worth $1,000 or $1,200. My estate is worth from four to five thousand dollars, and I intend it for you and your children if you come back here, and if not, for somebody else."

Shortly after Hanks received this letter he, as requested, came back to his wife's uncle's with his family, and thereupon John Wright put him in possession of what was called the Widow Dickens's farm, to which he removed with his family, where he resided up to the death of his uncle, which occurred in some two or three years thereafter.

On the 20th of January, 1870, John Wright made and executed his last will and testament, which was duly recorded after his death. By this will he devised and bequeathed to his two sisters who resided with him, and to the survivors of them, his entire real and personal estate "except the farm in Green county, Ky., on which Edward Hanks now lives, known as the Widow Dickens's tract, which I desire said Hanks and wife to have the benefit of so long as they may continue thereon. If the said Hanks and wife should leave or vacate, then it immediately to fall back to my two sisters above mentioned."

Some two years after the probate of Wright's will Hanks brought this suit, and claims Wright's entire estate under the agreement evidenced by his letter to Hanks of date December 18, 1867. From that letter it seems that Wright had been making offers to Hanks to induce him to come back, and in that letter he reminds him of the offers made him, and says if not accepted he will make some other arrangements. He then says "the land I have for you is worth $1,000 or $1,200."

We think the inference is that he had offered him this land, and therefore he reminded him that he now has it for him if he will come back and reside near him. And as appellant came back as requested, and the testator, Wright, put him in possession of the land promised him on his return, but failed to make him a deed, the court properly adjudged that the land belonged to appellants. And we are of opinion that the court properly adjudged that the balance of the estate did not belong to appellants.

As to the balance of his estate the testator did not offer it to Hanks if he would return to his vicinity, nor did he say he had it for him if he would return, but said "my estate is worth from four to five thousand dollars, and I intend it for you and your children if you return back here." This language only expresses the idea that if they came back he intended by his will or otherwise to give it to Hanks and his children. In other words, the letter fairly construed means this: that if Hanks would move back against the last of February, 1868, he should have the farm for so doing, and as further incentive to return he intimated that he intended his other estate for appellants and this is the construction that appellee and Edward Hanks must have given the letter for after the testator's death he became the auctioneer that cried off the personal estate for the devisee Darcus Wright, the other devisee having died, and became the purchaser of property at the sale thereby conceding the title of Darcus Wright under the will of her brother.

The mere intimation by the testator to his relative as to what he intends in the future to do with his estate does not contain the elements of a contract that can be enforced after his death. There can be no doubt from the letter that the testator intended that the land he offered Hanks should be the consideration for his return to his neighborhood, and the remainder of the letter was a mere intimation of what he expected to do with the balance of his estate.

Wherefore the judgment is *affirmed* on the original and cross-appeals.

*Edwards & Seymour, for appellants.*
*W. H. Cheef, Isaac Woodson, for appellees.*